# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 98-50473
Summary Calendar

PATRICIA J. MATASSARIN, Individually, for and on behalf of the
Great Empire Broadcasting Employee Stock Ownership Plan and its
Beneficiaries; for and on behalf of that class of persons, participants
and/or Beneficiaries of The Great Empire Broadcasting Employee
Stock Ownership Plan, past or Present, Defrauded,

                                                    Plaintiff-Appellant,

versus

F. F. MIKE LYNCH, Individually and as Trustee for The Great
Empire Broadcasting Employee Stock Ownership Plan (ESOP);
MICHAEL C. OATMAN, Individually and as Trustee for The Great
Empire Broadcasting Employee Stock Ownership Plan (ESOP); DANNY
E. JENKINS,  Individually and as a former Trustee of the ESOP and
Agent of the Trustees and Agent of the Administrator of The Great
Empire Broadcasting Employee Stock Ownership Plan; Great Empire
Broadcasting, Inc., Individually and as a Plan Administrator Individually
and as Trustee for The Great Empire Broadcasting Employee Stock Ownership
Plan (ESOP), and The Great Empire Broadcasting Employee Stock Ownership
Plan "Administrative Committee"; GREAT EMPIRE BROADCASTING INC.,
Individually and as Plan Administrator for The Great Empire Broadcasting
Employee Stock Ownership Plan; KAREN K. WARNER, C. P. A., Individually,
and as a Member of The Great Empire Broadcasting Employee Stock Plan "Administrative
Committee"; UNKNOWN MEMBERS OF THE "BOARD OF DIRECTORS", of
The Great Empire Broadcasting Employee Stock Ownership Plan; MENKE &
ASSOCIATES, INC.; DON T. BUFORD; CURTIS W. BROWN,

                                                    Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas
(5: 96-CV-482)

February 28, 2000

Before HIGGINBOTHAM, DeMOSS, and STEWART, Circuit Judges

PER CURIAM:[*]

---

[*] Pursuant to 5ᵀᴴ CɪR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CɪR. R. 47.5.4.

Patricia Matassarin appeals the district court's award of $113, 200.75 in attorneys' fees to the defendants. For the following reasons we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of the present case were thoroughly outlined by this court in Matassarin v. Lynch, 174 F.3d 549, 555 (5th Cir. 1999), cert. denied, —S.Ct.—, 2000 WL 29385 (2000) ("Matassarin I"). Patricia Matassarin brought suit against the Great Empire Broadcasting, Inc. ("Great Empire") employee stock ownership plan ("ESOP" or "Plan") and its fiduciaries and author. Id. at 556. The Great Empire ESOP is subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 et seq. Id. Until 1988, appellees Mike Lynch and Michael Oatman owned 75 and 25 percent of Great Empire, respectively. Id. Great Empire established the ESOP effective January 1, 1988, by document executed on October 21, 1988, in order to distribute Lynch's and Oatman's shares more widely among Great Empire employees. Id.

Appellant Matassarin was married to appellee Danny Jenkins, Great Empire's chief financial officer and a participant in the Great Empire ESOP, until the couple divorced on October 15, 1991. Id. Jenkins and Matassarin entered into a qualified domestic relations order ("QDRO") in which Jenkins agreed to assign Matassarin one-half of his interest in the Great Empire ESOP. Id. Great Empire would hold Matassarin's interest in a segregated account, where it would accrue interest at the rate of a one-year certificate of deposit. Id.

When Great Empire restated its Plan on December 15, 1994, Michael Oatman sent a letter to everyone who had a segregated account under the original Plan. Id. Most of the segregated-account holders, approximately sixty-seven people, were Plan participants who had left Great Empire's employment and had accounts established pursuant to Plan S 14(h). Id. The letter stated that the ESOP administrative committee had authorized lump-sum distributions to segregated-account holders. Id. at 557. The letter offered distributions either in cash or in shares of Great Empire stock. Matassarin contends that she never received this letter, and in any event

2

she did not respond to it. Id. The appellees later contended after the filing of the suit that Matassarin, unlike other segregated-account holders, was not entitled to any distribution and was sent Oatman's correspondence only in error. Id. According to the appellees, § 18(e)(4) in both the original and the restated Plan provides that the Plan need not offer Matassarin any distribution until Jenkins is eligible for retirement. Id. Section 18(e)(4) states: "In the case of any payment to an Alternate Payee before a Participant has separated from service, the Plan shall not be required to make any payment to an Alternate Payee prior to the date Participant attains (or would have attained) the Earliest Retirement Age." Id.

On May 9, 1996, Matassarin brought suit in the United States District Court for the Western District of Texas against Lynch, Oatman, Jenkins, Great Empire, Warner, Menke & Associates, and unknown members of Great Empire's Board of Directors. She alleged that the defendants committed common-law fraud and violated ERISA, federal securities laws, and state securities laws.

Matassarin filed a motion for class certification, with herself as the representative plaintiff, which the district court denied. Id. She then filed a motion to have her suit treated as a shareholder's derivative action, or alternatively for joinder, or alternatively for reconsideration of the district court's decision denying class certification. Id. The district court denied this motion. Id. The district court then granted partial summary judgment against Matassarin on her federal securities claims. Id. The court next granted partial summary judgment for all of the defendants on Matassarin's fraud, conversion, and state securities claims. Id. at 558. The court thereafter struck Matassarin's jury demand and, in two separate orders, granted summary judgment for the defendants on Matassarin's ERISA claims, effectively ending her suit. Id.

Matassarin also filed a motion requesting that Judge Prado, the presiding judge, recuse himself from the case on the basis of alleged bias. Id. The judge denied the motion and Matassarin petitioned this Court for a writ of mandamus directing Judge Prado to recuse himself.

3

Id.  A three-judge panel of this Court denied the petition and Matassarin's subsequent motion for rehearing on the issue.  Id.

Both Matassarin and the defendants filed motions seeking to recover attorneys' fees.  The district court denied Matassarin's motion but, finding Matassarin's ERISA suit "frivolous," awarded more than $24,000 in attorneys' fees to Menke & Associates and more than $88,000 to the other defendants.

Matassarin then appealed the district court's refusal to certify her proposed classes; the grants of summary judgment on her ERISA and securities claims;  the striking of her jury demand;  Judge Prado's refusal to recuse himself;  and the denial of her motion for attorneys' fees.  This court affirmed the district court's rulings in all respects.  Id. at 571.  The district court awarded attorneys' fees to the defendants after Matassarin filed her first notice of appeal in the underlying action.  Therefore, in the present case Matassarin only challenges the award of attorney's fees to the defendants.

### DISCUSSION

On appeal Matassarin argues that the district court erred in awarding attorneys' fees in excess of $113,000 to the defendants.  Specifically Matassarin contends that her ERISA arguments in the underlying action were not frivolous.  Matassarin further contends that the district court incorrectly weighed the factors used to determine the appropriateness of a fee award.  Finally, Matassarin argues that the district court was biased against her throughout these proceedings, and as a result entered the fee award in favor of the defendants.

ERISA § 502(g), applicable both to trials and appeals, provides that "the court in its discretion may allow a reasonable attorney's fee and costs ... to either party."  29 U.S.C. § 1132(g)(1); Wegner v. Standard Insurance Company, 129 F.3d 814, 820 (5th Cir. 1997).  We review the district court's decision to award attorneys' fees only for an abuse of discretion.  Wegner, 129 F.3d at 821 (citing Todd v. AIG Insur. Co., 47 F.3d 1448, 1458 (5th Cir.1995)).

In determining whether to award attorneys' fees in an ERISA action the district court should consider the following five factors in its analysis: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir.1980); Wegner, 129 F.3d at 821; Todd, 47 F.3d at 1458. "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g)." Bowen, 624 F.2d at 1266.

In the present case the district court outlined the Bowen factors and considered them in determining whether attorneys' fees were proper in this case. First, The district court found that the Matassarin's bad faith in bringing this lawsuit was evidenced by her numerous motions for reconsideration of the court's rulings, her "frivolous" motion to recuse, and the fact that many of her claims were "easily dismissed on summary judgment." In our opinion in Matassarin I, we agreed with the district court's finding in the underlying action that based on Matassarin's pleadings and her behavior during the course of the case it was likely that she wanted to be the representative in a class action against The Great Empire Broadcasting ESOP in an effort to hurt her ex-husband. See Matassarin I, 174 F.3d at 559. We further found that the defendants made no untrue statements of material facts or false representations in their dealings with Matassarin regrading her plan benefits. Id. at 562. Thus, there is ample support for the district court's finding that Matassarin was acting in some degree in bad faith relative to the defendants when she brought this action.

Matassarin's second major contention is that the district court improperly found that her ERISA arguments in the underlying action were without merit. The district court found "that the

5

plaintiff's position on most ERISA issues in this case had no merit." In Matassarin I, we specifically found that Matassarin's central argument in her federal securities claim, in which she argued that her interest in the ESOP was a security, was "without merit." Id. at 560. While we did acknowledge that due to the "opaqueness" of some of the Great broadcasting ESOP provisions it was understandable that Matassarin might question the treatment of her account. Id. at 564. However, we ultimately failed to sustain any of her arguments. Thus, there is no clear evidence to contradict the district court's finding that her arguments were without merit.[1]

Furthermore, there is no evidence that the district court was biased against Matassarin and thus failed to render an impartial attorneys' fees award. In Matassarin I, we found that Judge Prado's interaction with Matassarin, including his writing of a footnote that ordered all parties in the action to behave in a civil manner, "f [ell] far, far short of 'such a high degree of antagonism as to make fair judgment impossible'." Id. at 571.

The district court also concluded that it was without sufficient information to determine whether Matassarin was capable of paying the attorneys' fees. However, even assuming arguendo that it may pose an economic hardship for Matassarin to pay the attorneys' fees, this one factor is not decisive in the attorneys' fee determination. See Bowen, 624 F.2d at 1266. Therefore, because the district court carefully applied Fifth Circuit precedent, and we have been presented with no evidence to contradict the court's findings it is clear that the district court did not abuse its discretion in awarding attorneys's fees to the defendants.

AFFIRMED.

---

[1] Matassarin has also failed to come forth with any argument to persuasively contradict the district court's finding that its award would deter others from bringing similar actions.